## 25071. SOUTHERN SECURITY COMPANY *v.* AMERICAN DISCOUNT COMPANY.

DECIDED MAY 6, 1937.

*Robert T. Efurd, Mose S. Hayes,* for plaintiff in error.

*Carter, Carter & Johnson,* contra.

MacINTYRE, J. American Discount Company of Georgia brought a trover action against Southern Security Company Inc., in the municipal court of Atlanta, to recover $411.18, the balance of the purchase-price of a certain Plymouth automobile, title to which was alleged to be in the plaintiff by virtue of a retention-title contract "executed and delivered by G. F. Davies to Jordan Motor Company to secure the note therein referred to, and by said Jordan Motor Company transferred to petitioner along with said note." The copy of said retention-title contract attached to the petition as an exhibit recites that the balance due for said automobile was $528.66 payable in eighteen monthly installments of $29.37 each, and that these installments were evidenced by a promissory note "of even date herewith." The contract is headed "Georgia, Fulton County," dated November 17, 1933, signed "G. F. Davies," and witnessed "M. F. Ford." Attached to the retention-title contract is a copy of what we shall for convenience designate as "title certificate." It is as follows: "Georgia, Fulton County. I have this 17th Nov., 1933, purchased and received of Jordan Motor Co. . . one Plymouth Del. Coach automobile, factory number 2166764, on which I still owe $528.66, as evidenced by agreement and note executed contemporaneously herewith. Title to above remains in vendor or assigns until balance due is paid. G. F. Davies.

Signed and delivered in presence of: M. F. Ford, Notary Public."

This paper was filed for record on November 24, 1933, and was duly recorded. Attached to this title certificate was the note referred to in both the certificate and the preceding retention-title contract, payable to Jordan Motor Company, dated November 17, 1933, at Atlanta, Georgia, describing the automobile in question, and signed "G. F. Davies." The defendant's answer admitted jurisdiction, but denied every other material allegation of the petition. The judge rendered a judgment in favor of the plaintiff for $411.18, and the exception is to a judgment overruling the defendant's motion for new trial.

It was first contended that the plaintiff could not legally bring

the present action, because W. D. Jordan Jr., who was doing business as Jordan Motor Company, had failed to register as required by the act of 1929. In order to clarify this point, this court certified the two following questions to the Supreme Court:

(1) "Do the provisions of the act of 1929 (Ga. L. 1929, p. 233; Code, §§ 106-301—106-304), abolish the right of a holder in due course, as defined by the Georgia negotiable-instruments law (§ 14-502), to maintain an action on a negotiable instrument executed after the passage of the 1929 act and its codification, which instrument, without any knowledge or notice on the part of the holder, had been transferred to him by the payee having taken such instrument in his trade-name which had not been registered in compliance with the requirements of the Code, §§ 106-301 et seq. ?"

(2) "Are the provisions of the act relative to the unlawful use of fictitious or trade-names (Ga. L. 1929, p. 233; Code, §§ 106-301 —106-304), applicable to an action for conversion (an action of tort) in such manner as to prevent the holder in due course of a note and title-retention contract securing its payment from maintaining an action for wrongful conversion of the property to which title is retained, when such note and contract had been transferred or assigned for value to such holder, before maturity, by the payee, who had taken the same in his trade-name which had not been registered in compliance with the requirements of said Code sections ?" Both of the foregoing questions were answered in the negative, "on authority of *Peoples Loan & Finance Corporation* v. *Latimer,* 183 *Ga.* 809 (189 S. E. 899), and *Maxwell* v. *Pierce,* 183 *Ga.* 856 (189 S. E. 847)." In this connection the Supreme Court also cited *Smith* v. *Wood,* 111 *Ga.* 221 (36 S. E. 649) ; 8 C. J. 243, 766-769, §§ 383, 1032, 1033. *Southern Security Co.* v. *American Discount Co.,* 184 *Ga.* 82 (190 S. E. 350). The evidence unequivocally shows that W. D. Jordan Jr. was doing business under the name "Jordan Motor Company," and that he had never registered as required by said act of 1929. The answer of the Supreme Court to the foregoing certified questions speaks for itself.

The next most important question for determination is whether the defendant had constructive notice of the plaintiff's claim of title under the retention-title contract hereinbefore set out, when the former took possession of the automobile in question on or

about July 6, 1934, and sold it. In this connection we shall first state that it clearly appears from the evidence that the retention-title contract, the title certificate, and the note hereinbefore set out constituted but a single transaction, and that they were transferred to the American Discount Company of Georgia on November 17, 1933, the transfers being signed "Jordan Motor Co., by W. O. Jordan Jr." When the title certificate hereinbefore set out was offered in evidence it was objected to on the ground that it was improperly witnessed for recordation, for the reason that the witness M. F. Ford had been proved to be a notary public of the State at large, and his official signature did not indicate that he was such notary, as required by the Code, § 71-206 (Ga. L. 1916, p. 138). The paper in question was witnessed by "M. F. Ford, Notary Public," and the Code section last referred to reads: "The official signature of notaries appointed under this chapter shall indicate that they are for the State at large." Was the requirement of this law mandatory or directory? The Code, § 71-205, declares: "The qualifications, powers, duties, fees, and liabilities of such notaries shall be the same as those prescribed by law for notaries public appointed by judges of the superior court, except that they are authorized to act in any county in this State instead of only in the county of their residence and appointment; this chapter not being intended in any manner to repeal or modify the law with reference to notaries public appointed by judges of the superior court, but to create another class of notaries with power to act in any county in Georgia." We think that it is a fair conclusion that notaries public for the State at large were created not only for convenience, but in order that some of the difficulties arising from the limited jurisdiction of the notaries appointed by the judges of the superior court might be obviated. Before the passage of the act of 1916, providing for the appointment of notaries public for the State at large, the courts recognized the initials "N. P." as the usual and ordinary abbreviation for the official title of a notary public, and the probate of a mortgage attested by "C. W. Harris, N. P.," was prima facie legal. Of course, "a person holding title under a mortgagor and having notice, actual or constructive, of the existence of the mortgage can acquire no interest in the property adverse to the rights of the mortgagee." See *Towler* v. *Carithers*, 4 *Ga. App.* 517 (61 S. E.

1132). In *Solomon* v. *Dunlap-Huckabee Auto Co.,* 174 *Ga.* 782 (164 S. E. 185), the court said: "The contention that the retention-title contract . . was not entitled to record, and could not be considered because not entitled to record, is without merit. This contract . . has as an official witness, 'P. D. Thomas, N. P., State at Large, Macon, Georgia, Bibb County.' The letters and words, 'N. P., State at Large,' sufficiently indicate the official character of the witness, and will be regarded as prima facie sufficiently indicating that the witness whose signature was attached was a 'notary public of the State at large.'" The *Solomon* case is not referred to as controlling in the instant case, but because it is the only Georgia case we have been able to find that deals with § 71-206, supra.

"Generally, statutes directing the mode of proceeding by public officers, designated to promote method, system uniformity, and dispatch in such proceeding, will be regarded as directory if a disregard thereof will not injure the rights of parties, and the statute does not declare what result shall follow non-compliance therewith, nor contain negative words importing a prohibition of any other mode of proceeding than that prescribed." 59 C. J. 1077, § 633. The writer in the case of Nixon *v.* Grace, 98 Ark. 505, 506 (136 S. W. 670), quoted from Mr. Justice Sharswood, as follows: "When the words are affirmative, and relate to the manner in which power or jurisdiction vested in a public officer or body is to be exercised, and not to the limits of the power or jurisdiction itself, they may and often have been construed to be directory." The first division of the syllabus by the court in the recent case of *Haden* v. *Liberty Co.,* 183 *Ga.* 209 (188 S. E. 29), reads: "The provision of law which requires that the defendant in fi. fa., or his tenant or other person in possession of realty, shall be given five days' notice of levy upon realty, is merely directory, and not so essential as to avoid the levy of the fi. fa. The owner of real estate thus levied upon has a remedy by suit against the levying officer." It will be observed that the statute under consideration in the instant case "does not declare what result shall follow noncompliance therewith, nor contain negative words importing a prohibition of any other mode of proceeding than that prescribed." Our view is that this statute is directory and not mandatory, and that the "title certificate," which is in

reality a retention-title contract itself, was properly admitted in evidence over the objection raised. We are also of the opinion that the recorded paper was constructive notice of the plaintiff's claim of title. It appears from the evidence that the balance due on the purchase-price of the automobile was $528.66, and that the plaintiff collected four of the notes for $29.37 each, or $117.48. Evidently the judge arrived at his judgment by subtracting the last named sum from $528.66. Regardless of other testimony, we are of the opinion that the evidence supported the judgment. For reasons indicated in our ruling on the admissibility of the "title certificate," we hold that the retention-title contract and the note given in accordance therewith were properly admitted in evidence. There was evidence to show the conversion of the automobile in question, and the fact that no demand for it was made on the defendant is immaterial.

The foregoing rulings dispose of the controlling questions presented for our consideration. We have examined carefully every ground of the motion for new trial, and hold that none of them discloses reversible error.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*