46843, 46844. COLLINS v. NIX et al.; and vice versa.

EBERHARDT, Judge. This is a declaratory judgment proceeding brought for the primary purpose of determining the proper manner of filling vacancies on the board of the Union County Hospital Authority.

On December 28, 1956, appropriate resolutions were

adopted by the local governing bodies creating the Hospital Authority pursuant to the Hospital Authorities Law of 1941 (Ga. L. 1941, p. 241), which was then in effect. The creating resolution provided that vacancies on the board of the Authority should be filled by election and appointment by the remaining members of the board.

The Hospital Authorities Law of 1964, contained in the new Georgia Health Code (Ga. L. 1964, pp. 499, 598; *Code Ann. Ch.* 88-18) repealed and superseded the 1941 Act (Ga. L. 1964, pp. 650, 656 (59)) and provided that for new Hospital Authorities activated on or after March 15, 1964, each vacancy would be filled by action of the board in selecting one member from a list of three eligible persons submitted to the board by the governing body of the area of operation. Ga. L. 1964, pp. 499, 600 *(Code Ann.* § 88-1803). As to authorities which had been in existence prior to March 15, 1964, the new law provided as follows: "(1) Prior to May 1, 1964, the board of such Hospital Authority shall by resolution elect to have vacancies filled on such board pursuant to the provisions of this Chapter or in the same manner as such appointments were filled prior to the approval of this Act or its otherwise becoming law. (2) After said resolution has been formally adopted by the board, it shall be filed with the governing Authority of all participating unit or units of such Authority and all appointments to fill vacancies thereafter shall be governed by the terms of such resolution unless changed by local legislation or constitutional amendment." Ga. L. 1964, pp. 499, 600 *(Code Ann.* § 88-1803).

The difficulty giving rise to the present litigation is that the board continued to fill vacancies in accordance with the original method established by the creating resolution under the 1941 Act, but it was not until June 1, 1971, that the board formally adopted and filed with the governing authority a resolution providing that vacancies would be filled in the same manner as they had been filled prior to the approval of the 1964 Act. The resolution reads as follows: "Whereas, upon the approval of

[Ga. L. 1964, pp. 499, 598] the Board of Union County Hospital Authority elected to have vacancies on such board filled in the same manner as such appointments were made prior to the approval of such Act, but no formal resolution to that effect has been entered on the minutes of said board, and Whereas, vacancies on such board have continued to be filled in the same manner as such appointments were made prior to the approval of such Act, Now, Be It Resolved by the Board of Union County Hospital Authority that vacancies on such board be filled in the same manner as such appointments were filled prior to the approval of such Act."

Hence the primary issue revolves around the failure of the board to elect by formal resolution prior to May 1, 1964, whether vacancies would be filled in accordance with the procedure set forth in the 1964 Act or in accordance with the original procedure. The trial court, in its order ruling on the various motions for summary judgment, held that from the effective date of the 1964 Act until June 1, 1971, when the resolution was formally adopted, the Authority was obligated to fill vacancies in accordance with the procedure set forth in the 1964 Act, so that the appointments of board members Griffin, Foster and Phillips, having been made under the original procedure between the effective date of the 1964 Act and June 1, 1971, were invalid; however, the court further held that the requirement of the 1964 Act that the board must make its election as to the appointment procedure prior to May 1, 1964, was directory only, rendering valid and binding the resolution adopted on June 1, 1971, so that the proper manner of appointment after that date was the original procedure rather than that set forth in the 1964 Act. All portions of the above rulings are enumerated as error in either the main appeal or cross appeal. *Held:*

1. It appears clear to us from the fact that vacancies were filled both before and after the 1964 Act in accordance with the original procedure, and from the wording of the

formal resolution of June 1, 1971, set out above, that the board resolved to have vacancies filled in the same manner as obtained prior to the 1964 Act. The portion of the 1964 Act requiring an election by resolution as to the appointment procedure prior to May 1, 1964, contains no negative words restraining the doing of it afterwards; it does not declare what results shall follow upon noncompliance; and no injury appears to have resulted from the failure timely to adopt and file the resolution. The requirement that the election be made by timely, formal resolution and filed with the governing authority would appear to apply with greater force to an election to adopt the appointment procedure of the 1964 Act than to a retention of the original procedure—in the former instance the governing body of the area of operation must be put on notice of its duty to submit to the board a list of three eligible persons for each vacancy, while if the original procedure is retained there is no function for the governing body to perform with respect to vacancies on the board. Under these circumstances it is our view that the actions of the board, both in continuing to appoint members under the original procedure and in later formally adopting the resolution retaining the original procedure, must be upheld.

"A substantial compliance with any requirement of the Code, or laws amendatory thereof, especially on the part of public officers, shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by the enactment." *Code* § 102-102 (6). "Where a statute directs the doing of a thing in a certain time, without any negative words restraining the doing of it afterwards, generally the provision as to time is directory, and not a limitation of authority; and in such case, where no injury appears to have resulted, the fact that the act was performed after the time limited will not render it invalid." *O'Neal v. Spencer,* 203 Ga. 588 (47 SE2d 646); *Middleton v. Moody,* 216 Ga. 237, 241 (115 SE2d 567); *Hopping v. Cobb*

*County Fair Assn.,* 222 Ga. 704, 706 (152 SE2d 356). "Generally, statutes directing the mode of proceeding by public officers, designated to promote method, system uniformity, and dispatch in such proceeding, will be regarded as directory if a disregard thereof will not injure the rights of parties, and the statute does not declare what result shall follow non-compliance therewith, nor contain negative words importing a prohibition of any other mode of proceeding than that prescribed." *Southern Security Co. v. American Discount Co.,* 55 Ga. App. 736, 740 (191 SE 258).

Accordingly we reverse that portion of the order holding that from the effective date of the 1964 Act until June 1, 1971, the appointment procedure set forth in the 1964 Act was controlling, which ruling also invalidated the appointments made under the original procedure of board members Griffin, Foster and Phillips; we affirm that portion of the order upholding the resolution of June 1, 1971, and decreeing the proper method of appointment from that date to be the original method.

2. In the cross appeal error is enumerated on that portion of the order holding that the Authority is a public body, the members of which must act in person and not by proxy. While there appears to be a dearth of authority on the point, we think that since such authorities are in effect instrumentalities of the State discharging essential governmental obligations (see, e.g., *Undercofler v. Hospital Authority of Forsyth County,* 221 Ga. 501, 503 (145 SE2d 487); *Hospital Authority of Albany v. Stewart,* 226 Ga. 530 (175 SE2d 857) and cases cited; *Bradfield v. Hospital Authority of Muscogee County,* 226 Ga. 575 (176 SE2d 92); *Daughtrey v. State,* 226 Ga. 758 (177 SE2d 670)), it would be contrary to the public interest to hold that the members of boards of such Authorities could discharge their solemn responsibilities by way of proxies. Consequently this portion of the order must be affirmed.

*Judgment affirmed in part; reversed in part. Bell, C. J., concurs. Evans, J., concurs specially.*

ARGUED JANUARY 4, 1972—DECIDED FEBRUARY 21, 1972.

*Robinson, Buice, Harben & Strickland, B. Carl Buice,* for appellant.

*Telford, Stewart & Stephens, J. Douglas Stewart,* for appellees.

EVANS, Judge, concurring specially. The Hospital Authorities Law of 1941 (Ga. L. 1941, p. 241 et seq.) provides that successors to the trustees shall be appointed as provided for in the resolution of the governmental unit (county or municipality) creating the Hospital Authority; and in somewhat ambiguous fashion also provides that "The Authority shall make rules and regulations for its government . . ." and shall have perpetual existence. In all or many of such Hospital Authorities the Board of Trustees were given the right to appoint their own successors, thus making the said board autonomous, and although all or most of these hospitals are built and/or supported in part by public tax money, the public has been effectively denied any voice in the selection of the members of such hospital boards.

However, in 1964, the General Assembly in its comprehensive revision of the Georgia Health Code completely repealed the 1941 law and, among other things, provided that as to all hospitals activated after March 15, 1964: "The governing body of the area of operation shall submit a list of three eligible persons to the board of the Hospital Authority; the board at its next regular meeting shall elect one of the three persons named in said list." See Ga. L. 1964, pp. 499, 664; New Health Code Ch. 88-18. But as to all hospitals in existence prior to March 15, 1964, no substantial relief was afforded by this law, and the public must still contribute to the maintenance of such hospitals without any voice in the control and management thereof. However, *Code Ann.* § 88-1803 would permit such hospital authorities to decide for themselves whether they would give up their right to remain autonomous or continue as such. This law required the election to be made "prior to

May 1, 1964" by resolution of the board of such Hospital Authority.

In the case sub judice the Hospital Authority of Union County did not make any election until June 1, 1971; and while this is rather late, it had as much right to elect one method of filling vacancies as the other; to remain under the 1941 law or to be bound by the 1964 law. When Hospital Authorities deny the governing authorities of a county or municipality the right to participate in filling vacancies on the board, the public is not represented; and the only remedy left to the local government is to fail to levy taxes for support of the institution, which they are authorized, but not required to levy (Constitution of 1945, as amended; *Code Ann. Chs.* 2-57, 2-58). This may be small comfort to the governing authorities after they have issued bonds (as has been done in many cases) for the building of such hospitals.